**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0839n.06

No. 12-4446

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 19, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SNJEZANA CASTILLO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| ERIC H. HOLDER, JR., Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

BEFORE: COOK, GRIFFIN, and KETHLEDGE, Circuit Judges.

PER CURIAM. Snjezana Castillo petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her application for adjustment of status under the Cuban Refugee Adjustment Act (CAA), Pub. L. No. 89-732, 80 Stat. 1161 (1966). We deny the petition for review.

Castillo, a native and citizen of Croatia, entered the United States on December 13, 2004, as a non-immigrant exchange visitor with authorization to remain for a year. Castillo married Raul Castillo (Raul), a native and citizen of Cuba, on December 10, 2005, and subsequently filed an application for adjustment to permanent resident status under the CAA as the spouse of a Cuban national. Raul adjusted his status to permanent resident under the CAA in 1997, but lost that status after his 2000 conviction for counterfeiting alien registration receipt cards in violation of 18 U.S.C.

§ 1546(a).  Raul later returned to the United States and was ultimately granted withholding of removal, but his application for adjustment of status was denied.

On September 21, 2007, the Department of Homeland Security (DHS) denied Castillo's application for adjustment of status under the CAA because her Cuban husband was not eligible to adjust his status.  The DHS commenced removal proceedings against Castillo by filing a notice to appear with the immigration court, charging her with removability under Section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B), as a non-immigrant who has remained in the United States for a time longer than permitted.  Before an immigration judge (IJ), Castillo admitted the factual allegations set forth in the notice to appear, conceded removability as charged, and renewed her application for adjustment of status under the CAA.  Denying Castillo's application, the IJ concluded that she was ineligible for adjustment of status as a derivative beneficiary because the principal beneficiary, Raul, "does not possess the status he wishes to confer."  (A.R. 414). Castillo moved for reconsideration of her application for adjustment of status, asserting that the CAA provides her with an independent basis for adjustment without regard to her Cuban husband's status. The IJ granted Castillo's motion to reconsider and issued a new decision, again concluding that Castillo was ineligible for adjustment of status under the CAA because her Cuban husband's permanent resident status had been terminated.  Castillo appealed the IJ's decision.  Dismissing her appeal, the BIA affirmed the IJ's conclusion that Castillo was ineligible for adjustment of status under the CAA.

"Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination."  *Hachem v. Holder*, 656

F.3d 430, 437 (6th Cir. 2011) (internal quotation marks omitted). "We review questions of statutory interpretation de novo, but we apply the doctrine of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)." *Sejdini v. Holder*, 714 F.3d 399, 401 (6th Cir. 2013). Under *Chevron*, when reviewing an agency's construction of a statute which it administers, we first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

> The CAA provides in relevant part:
>
> [T]he status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. . . . The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States . . . .

CAA § 1. As the BIA pointed out, the CAA does not create an independent basis for spouses and children of Cuban nationals to qualify for adjustment of status without regard to the Cuban national's own status. Rather, the CAA requires the Cuban national to be an "alien described in this subsection." A plain reading of the CAA shows that a Cuban national must satisfy five requirements to qualify as an "alien described in this subsection": (1) the alien "has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and [(2)] has been physically present

in the United States for at least one year," (3) "the alien makes an application for such adjustment, and [(4)] the alien is eligible to receive an immigrant visa and [(5)] is admissible to the United States for permanent residence." *See Toro v. Sec'y, U.S. Dep't of Homeland Sec.*, 707 F.3d 1224, 1228 (11th Cir. 2013).

There is no dispute that Castillo's Cuban husband, due to his criminal conviction, is neither eligible to receive a visa nor admissible for permanent residence. Castillo contends that her Cuban husband *was* an alien described in Section 1 of the CAA and *was* allowed to adjust his status to that of a lawful permanent resident. But the relevant provisions of the CAA are written in the present, not past, tense. Castillo and Raul married long after he ceased being an alien described in Section 1.

Because Castillo's Cuban husband is ineligible to receive a visa and is inadmissible, Castillo does not qualify under the CAA's plain language as the spouse of "any alien described in this subsection." Accordingly, the BIA properly upheld the denial of Castillo's application for adjustment under the CAA, and we deny her petition for review.